1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CARLA PERKINS,

        Plaintiff,

    v.

ROTECH-QUEST HEALTH CARE INC., ET AL.,

        Defendants.

_____/

No. C-04-5197 JCS

**ORDER GRANTING PLAINTIFF CARLA PERKINS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT,  GRANTING IN PART AND DENYING IN PART MOTION OF DEFENDANT ROTECH FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF CLAIMS AND GRANTING IN PART AND DENYING IN PART SUPPLEMENTAL MOTION OF DEFENDANT ROTECH FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**
**[Docket Nos. 27, 44, 53]**

## I.    INTRODUCTION

On Wednesday, October 19, 2005 at 9:30 a.m., the following motions came on for hearing: 1) Plaintiff Carla Perkins' Motion for Leave to File First Amended Complaint ("the Motion to Amend"); 2) Defendant Rotech's Motion for Summary Judgment Or, in the Alternative, Summary Adjudication of Claims ("the Summary Judgment Motion"); and 3) Supplemental Motion of Defendant Rotech for Summary Judgment Or, in the Alternative, Summary Adjudication ("the Supplemental Summary Judgment Motion").  For the reasons stated below, the Motion to Amend is GRANTED.  The Summary Judgment Motion is GRANTED IN PART and DENIED IN PART.  The Supplemental Summary Judgment Motion is GRANTED IN PART and DENIED IN PART.

**United States District Court**
For the Northern District of California

**II.      BACKGROUND**

        **A.      Facts[1]**

        On June 25, 2001, Plaintiff Carla Perkins was hired by Defendant Rotech as a CSR Patient Coordinator in a division of Rotech doing business under the name of Quest Health Care (hereinafter, "Rotech"), in Foster City, California.  Declaration of Linda M. Inscoe in Support of Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Claims ("Inscoe Summary Judgment Decl."), Ex. A (Declaration of Anton Perdices in Support of Rotech's Motion for Summary Judgment or, in the Alternative, Summary Adjudication ("Perdices Summary Judgment Decl.")), ¶ 3;  Ex. B (Perkins Depo.) at 78, 80.  Perkins was hired by Annette Mariel, who was Perkins' direct supervisor at Rotech.  Declaration of Susan Rubenstein in Support of Plaintiff Carla Perkins' Opposition to Rotech' Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Claims ("Rubenstein Opposition Decl."), Ex. E (Mariel Depo.) at 36.

        Rotech is a nationwide healthcare company that provides home medical equipment and services, with approximately 4,500 employees working at around 500 locations throughout the country and with numerous offices in Northern California.  Inscoe Summary Judgment Decl., Ex. A (Perdices Summary Judgment Decl.) at ¶ 2, 6.  At the time Perkins was hired, there were two offices in Foster City, across the street from each other.  Rubenstein Opposition Decl., Ex. C (Fannin Depo.) at 68.  One of these offices supported a contract with the Veteran's Administration and the other supported a Medicare contract. Rubenstein Opposition Decl., Ex. A (DFEH Response), 2A(III).

        Perkins worked in the office supporting the VA contract until August 28, 2003, when she commenced a pregnancy related disability leave.  Inscoe Summary Judgment Decl., Ex. B (Perkins Depo.) at 81, 99;  *see also* Rotech's Separate Statement, No. 3 (stipulated), No. 9 (stipulated).  Just prior to going on leave, however, on August 25, 2003, she confirmed with area manager Nancy Fannin a transfer to a position supporting the Medicare contract that was about to become available because the employee who held that position had given two weeks' notice of his resignation.  Inscoe Summary Judgment Decl., Ex. B

---

    [1]  Unless otherwise indicated, the Court relies on facts that the parties have stipulated are undisputed as well as those facts the Court finds to be undisputed.

United States District Court

For the Northern District of California

(Perkins Depo.) at 87.  According to Perkins, in the August 25th conversation she asked  Fannin if she could "go ahead and accept that position before I went on leave, and she said yes, it's definitely mine." *Id.* Perkins testified that she initially requested this transfer when Nancy Fannin came to the Foster City office earlier in the summer to meet the employees and to discuss the planned closing of the oxygen department in which Perkins worked.  *Id.*  According to Perkins, one of the purposes of Fannin's visit was to "see who wanted to possibly move to the other side [that is, from the VA contract to the Medicare contract]."  *Id.* Fannin testified that Rotech lost the VA contract to a competitor in mid-2003 and that the office in which Perkins had worked was eventually closed, in January 2004.  Declaration of Linda M. Inscoe in Support of Rotech's Reply to Plaintiff's Opposition to Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Claims ("Inscoe Summary Judgment Reply Decl."), Ex. D (Fannin Depo.) at 69.

In August 2003, in the late stages of her pregnancy and on the recommendation of her medical provider, Perkins gave notice to her manager, Mariel, that she intended to take family leave in connection with her pregnancy.[2]  Rubenstein Opposition Decl., Ex. E (Mariel Depo.) at 47; Ex. C (Fannin Depo.) at 109.  Under Rotech's policy, employees are allowed up to 12 weeks of family leave so long as they meet the following conditions: 1) they have been employed by the company at least one year; 2) they have worked a minimum of 1,250 hours for Rotech during the previous twelve months; and 3) they work at a location where Rotech employs at least 50 employees within a 75-mile radius.  Rubenstein Opposition Decl., Ex. B, Plaintiff's Exhibit 7 (Employee Handbook excerpt).

Perkins commenced her leave on August 28, 2003.  *Id.*, Ex. B (Perkins Depo.) at 100.  Mariel obtained the paperwork for Perkins' leave from Rotech's website and assisted Perkins in completing the forms.  Rubenstein Opposition Decl., Ex. E (Mariel Depo.) at 47.  Both Mariel and Perkins believed that Perkins met the three conditions listed above and therefore qualified for family leave.  *Id.*, Ex. B at 102-103.  Perkins turned in the signed paperwork on September 9, 2003.  *Id.* at 106.

Among the forms completed by Perkins was a Medical Provider Certification provided by her midwife and a Leave of Absence Request.  Rubenstein Opposition Decl., Ex. B (Medical Provider

---

[2]  There is no evidence in the record that prior to this leave Perkins had ever requested family leave. She did, however, take a month of medical leave in August 2002 after she was rushed to the emergency room with an ectopic pregnancy.  Inscoe Summary Judgment Decl., Ex. B (Perkins Depo.) at 84.

**United States District Court**
For the Northern District of California

Certification) & Ex. E (Mariel Depo.), Deposition Exhibit B.  The Medical Provider Certification, which was completed by Perkins' medical provider, estimated that Perkins would be able to return to work on November 1, 2003.  Rubenstein Opposition Decl., Ex. E (Mariel Depo.), Deposition Exhibit B.  The Leave of Absence Request form indicates that Perkins requested 10 weeks of maternity leave and listed the dates of her requested leave as August 27, 2003 to November 1, 2003.  *Id*.  That form includes a separate box labeled "Approvals," carrying Mariel's signature as evidence of "Manager Approval."  *Id*.  Perkins testified that at the time she completed the paperwork, she assumed the November 1, 2003 return date allowed her 12 weeks of leave from August 28, 2003.  Rubenstein Opposition Decl., Ex. B (Perkins Depo.) at 104.[3]  It was not until she later reviewed the paperwork at home that she realized the period set forth was less than 12 weeks.  *Id*.  At that point, however, she did not try to change the date because she believed she would be ready to return to work on November 1.  *Id*.

   The paperwork also includes an "Employer Response" form.  Rubenstein Opposition Decl., Ex. E (Mariel Depo.), Deposition Exhibit C.  Although the form is signed by Mariel, Mariel testified that the boxes checked on the forms were filled in by someone at corporate headquarters.  *Id*. at 58.  The form began by stating that Perkins had requested leave beginning August 28, 2003, and that she "expect[ed] leave to continue until on or about 11-1-03."  *Id*., Deposition Ex. C.  It then stated that Perkins was "eligible . . . for leave under the FMLA" and explained that she "had  the right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period" because of the birth of her child.  *Id*.  The form specified that Perkins would not be required to provide periodic reports of her "status and intent to return to work every 30 days while on FMLA leave."  *Id*.

   On October 10, 2003, Perkins came into the office with her baby to talk with location manager Chris Anderson.  Rubenstein Opposition Decl., Ex. D (Kirsch Depo.) at 39.  Anderson was another location manager who apparently assisted  Perkins after Mariel resigned, at the end of September.  *Id*.

   On Friday, October 31, 2003, Perkins came in to the office again to discuss her return with the new location manager, Heidi Kirsch.  Rubenstein Opposition Decl., Ex. B (Perkins Depo.) at 113.

---

   [3]  In fact, the indicated dates covered less than the ten weeks that were requested and approved.  A full ten-week period would have required Perkins to return to work on November 7, 2003.  A twelve-week period would have ended on November 21, 2003.

According to Perkins, she discussed the new position she would be taking on and the possibility of a raise when she returned. *Id.* In addition, she told Kirsch that there had been a delay in the processing of paperwork by a child care program in which Perkins hoped to place her infant, making it possible she would not be able to return to work on Monday and possibly, the entire week. *Id.* at 113, 115, 117. Kirsch did not have Perkins' paperwork in front of her during this meeting and she informed Perkins of this fact. Declaration of Linda M. Inscoe.in Support of Rotech's Reply to Plaintiff's Opposition to Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Claims ("Inscoe Summary Judgment Reply Decl."), Ex. C (Perkins Depo.) at 118.

Perkins told Kirsch that, based on her "understanding of the family leave at that time . . . that I had another week left [from Friday, October 31, 2003] before I had to come back" *Id.* at 117. Mariel responded by telling Perkins that "if [she] needed to take the rest of her family time, that it was okay with her. She totally understood. She appreciated [Perkins] coming into the office and meeting her. She would tell Nancy to call me as far as about the position and how it has changed, and to also talk about the possible raise." *Id.* at 113.

According to Perkins, on Sunday, November 2, 2003, she called Kirsch because she had not heard back from any Rotech representative regarding her position. Rubenstein Opposition Decl., Ex. B (Perkins Depo.) at 120. Perkins told Kirsch that she would not be able to come in on Monday because she would have to go to the child care office to try to take care of the paperwork problem she had discussed with Kirsch during the Friday meeting and that it was possible she would be able to come in on Tuesday. *Id.* Kirsch told Perkins that she would not be at her desk on Monday, so Perkins should leave a message and Kirsch would call her back either Monday night or, if Perkins couldn't return to work for the week, on Tuesday. *Id.* at 121.

Perkins requested that Fannin call her, but Fannin did not do so on Sunday or Monday. *Id.* at 122; *see also id.* at Ex. D (Kirsch Depo.) at 54 (testifying that she "related a lot of information to Nancy Fannin" and that there were "certain conversations where Nancy was not calling Carla back in a timely manner" and when Kirsch reminded Fannin, Fannin responded by saying, "Just stay out of it. Leave me alone – or leave it alone. I'm handling it.")

United States District Court

For the Northern District of California

Perkins testified that on Monday, November 3, 2003, at around noon, she called Kirsch and left a message telling her that she was going to take the rest of the week off because the child care arrangements for her infant "was going to take a lot longer than [she] thought." *Id*., Ex. B at 121.  Kirsch played the voice mail message for Fannin, who listened to the message with Kirsch.  *Id*., Ex. D (Kirsch Depo.) at 47, 50.  Fannin said she would deal with the situation.  *Id*. at 47.

On Tuesday, according to Perkins, Fannin called Perkins twice, once in the morning and once at around 3 pm.  *Id*., Ex. B at 122, 125.  In the second call, Fannin told Perkins that she was entitled to only ten weeks of leave and that because Perkins had not come to work on Monday or Tuesday, she was being terminated as a "no/call no show."  *Id*. at 125.  Perkins told Fannin that according to her calculation, the ten-week period would not expire until Friday, November 7 and offered to come in that Friday if this was necessary to retain her position.  *Id*. at 126.  Fannin refused to allow Perkins to do this, saying she would "have to let [her] go."  *Id*.

In late November, Rotech hired a woman to replace Perkins.  Inscoe Summary Judgment Decl., Ex. D (Kirsch Depo.) at 5-7.

### B.    Procedural History

On November 4, 2004, Plaintiff filed a complaint in state court alleging the following claims:  1) employment discrimination based on gender and pregnancy, in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940; 2) employment discrimination based on violation of the California Family Rights Act ("CFRA"), Cal. Gov. Code § 12945.2; 3) failure to take all reasonable steps to prevent discrimination from occurring, in violation of FEHA; 4) retaliation in violation of FEHA; and 5) wrongful termination in violation of public policy based on FEHA and the CFRA.  Plaintiff sought compensatory and punitive damages, attorneys' fees and interest.  Defendant removed the action to this court on December 8, 2004.

On September 2, 2005, Defendant filed its Summary Judgment Motion.  Plaintiff opposed the Summary Judgment Motion and brought a Motion to Amend to add a claim under the Family Medical Leave Act, 29 U.S.C. §§  2615 and 2617 and to amend some of the claims in the original complaint. Defendant opposed the Motion to Amend and filed a Supplemental Summary Judgment Motion seeking summary judgment on the additional claim in the event the Motion to Amend is granted.

**United States District Court**

For the Northern District of California

**C.      The Motions**

        **1.      The Summary Judgment Motion**

Defendant asserts in its Summary Judgment Motion that all of the claims alleged in Plaintiff's original complaint fail as a matter of law.

First, Rotech asserts that Plaintiff is not entitled to family leave under the CFRA because at the time Plaintiff went on leave, there were fewer than 50 Rotech workers within a 75-mile radius of the Foster City office in which she worked, thus exempting Rotech from the leave requirements of the CFRA.  In support of this assertion, Rotech provides a declaration by Anton Perdices, a Human Resources Information Systems Manager at Rotech, stating that there were fewer than 50 Rotech employees within a 75-mile radius of the Foster City office in which Plaintiff worked.  Inscoe Decl., Ex. A (Perdices Summary Judgment Decl.) ¶¶ 4-6 & Exs. A, B.  Perdices reached this conclusion by "running a report" from Rotech's personnel database that purportedly listed all of Rotech's employees at the four locations Perdices said were within 75 miles of the Foster City office (Foster City, Napa, Santa Rosa, and San Carlos).  The list generated by Rotech reflects a total of 33 Rotech employees.  *Id.*, Ex. B.

In response to Plaintiff's anticipated position that Rotech is estopped from denying Plaintiff's eligibility because it told her she was entitled to leave under the FMLA – which has the same exemption for work places with fewer than 50 employees in a 75-mile radius  – Rotech argues Plaintiff cannot rely on estoppel because she did not assert a claim under the FMLA.

Second, Rotech asserts that Plaintiff's discrimination and retaliation claims under FEHA fail because Plaintiff has not made a prima facie case of discrimination, and even if she has, Rotech has articulated a legitimate, non-discriminatory reason for terminating Plaintiff and she has not come forth with specific, probative evidence of pretext.  In particular, Rotech points to the fact that Plaintiff did not return to work at the end of her leave, which officially expired as of November 1, 2003.  Rotech also points to a statement in the employee handbook which states as follows: "The Company will separate from employment an individual who does not return to work when the FMLA leave expires."  Inscoe Decl., Ex. A (Perdices Summary Judgment Decl.), Ex. C thereto (Employee Handbook excerpt).  As additional evidence that Rotech could not have discriminated against Plaintiff, Rotech asserts that it had twice granted Plaintiff pregnancy related disability leave, that the VA contract that Plaintiff had supported had not been

**United States District Court**
For the Northern District of California

1   renewed, that Plaintiff was "visibly pregnant" when Fannin agreed to transfer her to a position supporting

2   the Medicare contract, and that Rotech hired a "young woman of childbearing age" to replace Plaintiff.

3          Finally, Rotech asserts that the claims for failure to take reasonable steps to prevent discrimination

4   and wrongful termination in violation of public policy fail because they are based on the discrimination and

5   retaliation claims.

6          In her Opposition, Plaintiff challenges Rotech's evidence regarding the number of Rotech

7   employees who worked within a 75-mile radius of the Foster City office.  Plaintiff provides a declaration by

8   Bruce Cossairt, who was Rotech's Divisional Human Resources Manager for the West Division when

9   Plaintiff was terminated, casting doubt on the validity of Perdices' numbers.  Declaration of Bruce Cossairt

10  in Support of Plaintiff Carla Perkins' Opposition to Rotech's Motion for Summary Judgment or, in the

11  Alternative, Summary Adjudication ("Cossairt Decl.").  Cossairt states:

12          As the former Divisional Human Resources Director for Rotech, I never
            saw a report such as the one attached as Exhibit B.  It appears the "report"
13          was created using Excel and it means nothing as far as showing the number
            of employees in these locations.  Payroll records would be the credible way
14          to show the number of employees in a given area at the time that Rotech
            approved this leave for Carla Perkins.
15

16  Cossairt Decl., ¶ 10.[4]  She also notes that the list provided in the Perdices Summary Judgment Declaration

17  is inconsistent with Rotech's response to the DFEH investigation, in which Rotech stated that during the

18  relevant period there were only 19 Rotech employees within a 75-mile radius of the Foster City location.

19  *See* Rubenstein Opposition Decl., Ex. A.

20          Plaintiff goes on to point to testimony identifying a number of specific individuals who apparently

21  worked for Rotech within 75 miles of the Foster City location who were not included on Perdices' list.  *See*

22  Opposition at 10.  For example, Plaintiff identified two individuals, Judy Cook and Georgia Schilling, who

23  were managers for the Napa and Santa Rosa locations and who were not included on the list.  *See*

24  Rubenstein Opposition Decl., Ex. C (Fannin Depo.) at 71-72.  Two individuals who Kirsch allegedly

25  testified worked at the Foster City office – Jason Dewillers and Leslie Ianarello – also were not included on

26

27  _____

28      [4] Defendant objects to this testimony as lacking foundation.  The Court need not reach this objection
    because it does not rely on this testimony in deciding Defendant's motions.

8

United States District Court

For the Northern District of California

1    Perdices' list.  *See id*., Ex. D (Kirsch Depo.) at 88.[5]  Plaintiff further points out that the list provided by

2    Perdices did not include any employees for Rotech's facilities in Vacaville, San Carlos, Hayward, or

3    Sonoma.  Plaintiff also asserts that the very fact that Rotech management approved her leave under the

4    FMLA is evidence that it employed more than 50 individuals within a 75-mile radius.

5           Plaintiff argues that even if Rotech employed fewer than 50 employees within a 75-mile radius, it is

6    estopped from contending it did not have sufficient employees under the CFRA because it told Plaintiff she

7    qualified for leave under the FMLA, which has the same eligibility requirements.

8           With respect to the pregnancy and gender discrimination claims, Plaintiff argues that there is

9    sufficient evidence of pretext to create a fact question.  Plaintiff points to evidence that although she was

10   terminated under Rotech's no call, no show policy, she had, in fact, called in numerous times between her

11   Friday meeting and the Tuesday notification that she had been terminated.  In addition, Plaintiff cites to the

12   declaration of Bruce Cossairt, who approved her termination, stating that he only approved Plaintiff's

13   termination because he was unaware of all of the circumstances and that the termination violated Rotech's

14   established policy at the time.  Cossairt states as follows:

15           As I understand the facts in this case, Ms. Carla Perkins was terminated as
             a "no call, no show" on November 4, 2003.  I have been informed and
16           believe that Ms. Perkins did not report to work on November 3, 2003 as
             expected by Ms. Nancy Fannin, the Area Manager.  Ms. Fannin testified
17           that on the following morning, November 4, 2003, at approximately 11:00
             a.m., I instructed her to fire Ms. Perkins as a no call, no show."  I did in
18           fact instruct Ms. Fannin to terminate Ms. Perkins, however, I was not
             provided with accurate information regarding Ms. Perkins' status.  I was
19           informed several times by Nancy Fannin that Ms. Perkins had missed work
             and that she had not returned on her scheduled time.  Only after being told
20           by Ms. Fannin that Ms. Perkins had missed her fourth day of work, did I
             approve the termination as "no call - no show."  I would not have
21           recommended termination had I been apprised of Ms. Perkins' status of
             being on FMLA.
22
             For instance, I was never advised that Ms. Perkins had been on an
23           authorized pregnancy leave as of August 28, 2003. . . .  In fact, Ms. Fannin
             did not advise me that Ms. Perkins had been on any leave at all.  Ms.
24           Fannin's testimony that she told me Ms. Perkins was on FMLA is not

25   ───────────────────

26           [5]  Plaintiff cites pages 14 and 88 of the Kirsch Deposition in support of this assertion.  Page 88
     supports the assertion that Leslie Ianarelli worked at the Foster City office but does not mention Jason
27   Dewillers.  Plaintiff failed to provide page 14 of the Kirsch Deposition in support of her Opposition brief.
     Defendant did provide this page in support of its Reply brief, but there is no mention of Jason Dewillers on page
28   14.  *See* Inscoe Summary Judgment Reply Decl., Ex. D (Kirsch Depo.) at 14.

United States District Court

For the Northern District of California

accurate.  If I knew Ms. Perkins was on family leave, I would have never authorized her termination.

I am familiar with Rotech's "no call, no show" termination policy.  This type of termination is reserved for an employee who basically abandons the job for four (4) consecutive days without notifying the company.

Under the circumstances in this case, a "no call, no show" termination would not be appropriate.  A "no call, no show" would not apply to an employee on family leave.  My understanding now is that Ms. Perkins had been out on a family leave less than 10 weeks.  Rotech's policy was to extend pregnancy-related FMLA for up to 12 weeks if requested by the employee.

Cossairt Decl., ¶¶ 5-8.[6]

In its Reply, Rotech concedes that the Perdices Summary Judgment Declaration was incorrect but maintains that nonetheless, the Court should find as a matter of law that the CFRA does not apply because there were fewer than 50 Rotech employees in a 75-mile vicinity.  In support of this assertion, Rotech provides a new declaration by Perdices in which Perdices states that due to a "software problem" his original list was "unreliable."  Declaration of Anton Perdices in Support of Rotech's Reply to Plaintiff's Opposition to Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Claims ("Perdices Reply Decl."), ¶ 4.  Perdices presents a revised list, which he asserts is now accurate because he has reviewed payroll records for August 27 and 28 of 2003.  *Id.*, ¶ 5.  According to Perdices, as a result of his review Judith Cook was added to the list while a number of employees previously listed were dropped, resulting in a total of 32 employees rather than the previous count of 33.  *Id*.  Perdices states that Dewillers was not employed "in the relevant geographic area" on August 27 and 28, that the Vacaville, San Carlos, and Sonoma locations had no employees on that date, and that the Vacaville location had already closed.  *Id.*, ¶ 7.  Perdices does not include Georgia Schilling or Leslie Ianarello on the list or address

---

[6] Rotech objects that the cited testimony lacks foundation because Cossairt "worked at Rotech for a scant three months."  Rotech's Objections to Plaintiff's Evidence in Opposition to Rotech's Motion for Summary Judgment or Summary Adjudication ("Rotech Objections").  Rotech also notes that some of the statements are hearsay and/or are not based on personal knowledge to the extent Cossairt summarizes facts that he has learned subsequent to the initiation of litigation.  With respect to the latter category of statements, the Court does not rely on Cossairt's testimony and thus need not reach Rotech's objection. With that exception the Court overrules Rotech's objections.  Cossairt held a senior position in Rotech's human resources division and was ultimately responsible for Plaintiff's termination.  As such, Cossairt is qualified to testify about Rotech's personnel policies and the events surrounding Perkin's termination of which he had first-hand knowledge.

1  Plaintiff's assertion that these individuals should have been included.  Perdices also notes that although he

2  included the Santa Rosa employees in the count out of caution, a MapQuest print-out indicates that the

3  Santa Rosa office is outside of the 75-mile radius because it is 78.06 miles from the Foster City office.  *Id.*,

4  Ex. B.

5       With respect to the lower number of employees in the relevant area provided to the DFEH during

6  its investigation of Plaintiff's claims, Rotech states that it doesn't know how this number was derived, but

7  that there are many possible explanations for the discrepancy.

8       Rotech again rejects Plaintiff's estoppel argument based on the fact that the Rotech paperwork

9  stated only that Plaintiff was eligible for family leave under the FMLA and not the CFRA.

10       Regarding pretext, Rotech reiterates its earlier arguments and rejects Cossairt's testimony on the

11  basis that because Cossairt worked only a "scant three months" at Rotech, his statements lack foundation.

12  Rotech also argues that Cossairt's statement that an employee coming back from family leave would not

13  have been terminated under the circumstances here contradicts the statement in the employee handbook

14  that stating that employees who do not return from family leave will be terminated.

15       **2.**      **Motion to Amend**

16       Plaintiff seeks leave to amend her complaint to add a claim under the FMLA, to incorporate the

17  FMLA as a basis for other claims and to correct several erroneous statutory references in her FEHA claims

18  for failure to prevent discrimination and retaliation.  Plaintiff's proposed amended complaint (hereinafter,

19  "First Amended Complaint") asserts the following claims:

20       <u>Claim One</u>: Employment discrimination based on gender and pregnancy in violation of FEHA (Cal.

21       Gov. Code §§ 12940 *et seq.*);

22       <u>Claim Two</u>: Employment discrimination in violation of the CFRA (Cal. Gov. Code § 12945.2);

23       <u>Claim Three</u>: Employment discrimination in violation of the FMLA (29 U.S.C. §§ 2615(a)(1)and

24       2617);[7]

25

26        [7] In the First Amended Complaint Plaintiff also cited §§ 2615(a)(2) (which prohibits discrimination against any individual who has opposed a practice under  the FMLA) and 2615(b) (which prohibits

27  discrimination against an individual who has filed a charge or participated in an inquiry or proceeding regarding an alleged violation of the FMLA).  At oral argument, however, Plaintiff stipulated  that her claim under the

28  FMLA is limited to a claim for interference with her exercise of rights, in violation of § 2615(a).

1    Claim Four: Failure to take all reasonable steps to prevent discrimination from occurring in violation

2    of FEHA (Cal. Gov. Code §§ 12940(j)(1) & (k);[8]

3    Claim Five:   Retaliation in violation of FEHA (Cal. Gov. Code §§  12940 (h) and (i));[9]

4    Claim Six: Wrongful termination in violation of public policy based on violation of FEHA, the

5    CFRA and the FMLA.[10]

6    Plaintiff asserts that it is in the interest of justice to allow her to amend her complaint because the FMLA is

7    identical to the CFRA and therefore, Rotech will suffer no prejudice.  Plaintiff further notes that discovery

8    has not yet closed and trial is more than five months away.  Plaintiff attributes her failure to seek leave to

9    amend earlier in the case to inadvertence.

10       Rotech opposes the Motion to Amend on the basis that Plaintiff's request comes too late and is

11   merely a bad faith attempt to avoid summary judgment.  Rotech also asserts that amendment would be futile

12   because the FMLA claims also fail on summary judgment (as discussed in Rotech's Supplemental

13   Summary Judgment Motion).  Rotech argues that it will be prejudiced because it will be forced to expend

14   additional resources to respond to the new claims.

15                **3.        The Supplemental Summary Judgment Motion**

16       In its Supplemental Summary Judgment Motion, Rotech seeks summary judgment on all of the

17   claims asserted in First Amended Complaint, making essentially the same arguments as to the FMLA claims

18   it raised in the Summary Judgment Motion regarding the CFRA claims.  In particular, Rotech argues that

19   the FMLA does not apply because Rotech did not employ 50 or more employees within a 75-mile radius.

20   Rotech also suggests that the estoppel argument may not apply because the Ninth Circuit has not applied

21

22   _____

23       [8]  In the original complaint, Plaintiff erroneously cited Cal. Gov. Code § 12940(h)(1) and (i).  As was
     evident from the allegations supporting this claim and the title of the claim, these sections had  nothing to do with
24   Plaintiff's claim.  It is clear from Defendant's Summary Judgment Motion that Defendant understood the claim
     asserted in the original complaint to be a claim under subsections (j)(1) and (k) rather than (h)(1) and (i).

25       [9]  In the original complaint, Plaintiff erroneously cited Cal. Gov. Code § 12940(f) and (g).  As was
     evident from the allegations supporting this claim and the title of the claim, these sections had  nothing to do with
26   Plaintiff's claim.  It is clear from Defendant's Summary Judgment Motion that Defendant understood the claim
     asserted in the original complaint to be a claim under subsections (h) and (i) rather than (f) and (g).

27
         [10]  In the original complaint, this claim was based on the alleged violation of FEHA and the CFRA.
28   Plaintiff has amended this claim to add the FMLA as a basis for the claim.

United States District Court

For the Northern District of California

1   this doctrine in the context of the FMLA.  In any event, Rotech asserts, there can be no estoppel because

2   the FMLA "plainly" did not apply and therefore, there was no reasonable reliance.  In addition, Rotech

3   argues that Plaintiff's FMLA claims fail as a matter of law because Plaintiff cannot show that her taking

4   FMLA was a negative factor in Rotech's decision to terminate her.  Finally, Rotech asserts that Plaintiff is

5   not entitled to punitive damages under the FMLA, citing *Lui v. Amway Corp.*, 347 F.3d 1125, 1133 n. 6

6   (9th Cir. 2003).

7        In her Opposition, Plaintiff again challenges the evidence on which Rotech relies regarding the

8   number of Rotech employees within a 75-mile radius, this time addressing the statements in the Perdices

9   Reply Declaration.  Plaintiff asserts that the continually changing numbers offered by Rotech, if not evidence

10  of outright bad faith, at least support an inference that the numbers are unreliable, especially in light of

11  Rotech's failure to proffer any credible evidence, such as payroll records or EEO-1 data, in support of its

12  defense.[11]  Plaintiff argues further that she has presented sufficient evidence to support her claims of

13  discrimination and retaliation.  Plaintiff does not dispute that she is not entitled to punitive damages under the

14  FMLA.[12]

15        In its Reply, Rotech disputes Plaintiff's assertion that it did not provide payroll information in

16  response to Plaintiff's August 23, 2005 request for production.  According to Rotech counsel Linda Inscoe,

17  Rotech timely produced the requested documents, including payroll records, on September 26, 2005.

18  Declaration of Linda M. Inscoe in Support of Rotech's Reply to Plaintiff's Opposition to Supplemental

19  Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Claims ("Inscoe

20  Supplemental Summary Judgment Reply Decl.").  Rotech further asserts that Plaintiff's complaints about its

21  evidence concerning the number of employees within a 75-mile radius are unfounded and fail to make up

---

[11]  According to Plaintiff, on August 23, 2005, she requested production of documents showing the total number of employees at Rotech's Northern California facilities but only received from Rotech "unauthenticated computerized documents which are essentially non-responsive, unintelligible, and redacted so as to obscure the meaning of the documents.  Declaration of Susan Rubenstein in Support of Plaintiff Carla Perkins' Opposition to Rotech's Supplemental Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Claims ("Rubenstein Supplemental Summary Judgment Opposition Decl."), ¶ 11.  Plaintiff notes that these documents were not accompanied by a privilege log and were not provided to the Court in support of its summary judgment motions. *Id*.  Plaintiff did not, however, bring a motion to compel.

[12]  Accordingly, Defendant's Supplemental Summary Judgment Motion is granted on this issue on the basis that it is unopposed.

1   for the fact that Plaintiff herself has produced no admissible evidence that Rotech employed 50 or more

2   individuals within that area.

3   **III.     ANALYSIS**

4          **A.     The Motion to Amend**

5          Because Defendant has already filed a responsive pleading in this action, Plaintiff must obtain leave

6   to file an Amended Complaint. *See* Fed.R.Civ.P. 15(a). Rule 15(a) provides that "leave shall be freely

7   given when justice so requires." In determining whether to grant leave to amend, courts consider the

8   following factors: "1) bad faith, 2) undue delay, 3) prejudice to the opposing party, 4) futility of amendment,

9   and 5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d

10  367, 373 (9th Cir.1990). However, the Ninth Circuit has cautioned that "not all of the factors merit equal

11  weight [and that] it is the consideration of prejudice to the opposing party that carries the greatest weight."

12  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Thus, in the absence of

13  prejudice, or a "strong showing" of any of the remaining factors, "there exists a *presumption* under Rule

14  15(a) in favor of granting leave to amend." *Id*.

15         Here, the proposed amendment will result in little or no prejudice to Defendant because the FMLA

16  claims Plaintiff seeks to add are not based on any new facts or theories. Indeed, Defendant does not

17  dispute that the requirements for Plaintiff's FMLA claims are identical to the requirements for her claims

18  under the CFRA. In fact, the only prejudice Defendant identifies is the additional resources it will need to

19  expend to defend against this claim. Given that the new claims are virtually identical to the claims in the

20  original complaint, this prejudice is minimal and does not justify denial of Plaintiff's Motion to Amend.

21         Nor does the Court find that Defendant has made a "strong showing" of bad faith sufficient to

22  overcome the presumption in favor of allowing amendment. While the Court is troubled by the fact that

23  Plaintiff did not seek to amend her complaint earlier in the case, for instance, when the case was first

24  removed to federal court, the Court finds no evidence that this delay was due to anything but inadvertence.

25  *See Abels*, 229 F.R.D. at 155 ("In the Ninth Circuit, delay alone is insufficient to provide grounds for

26  denying leave to amend"). Finally, as discussed below, the Court concludes that amendment is not futile.

27  Accordingly, the Motion to Amend is GRANTED.

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

**B.      The Summary Judgment Motions**[13]

      **1.      Legal Standard**

Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense on which the nonmoving party will bear the burden of persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This can be done by either producing evidence that negates an essential element of the nonmoving party's claim or defense *or* by showing that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos. Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the movant has made this showing, the burden shifts to the party opposing summary judgment to "designate specific facts showing there is a genuine issue for trial."  *Celotex*, 477 U.S. at 323.

      **2.      Gender and Pregnancy Discrimination Claim (FEHA**)

Rotech asserts that Plaintiff's discrimination claim under FEHA fails because she has not made out a prima facie case of discrimination, and even if she has, she has not presented specific and probative evidence of pretext in the face of the legitimate, non-discriminatory reasons offered by Rotech for Plaintiff's termination.  The Court disagrees.  Based on the evidence offered by Plaintiff, a jury could reasonably conclude that Plaintiff was terminated based on her gender and pregnancy.

It is unlawful, under FEHA, for an employer "because of . . . sex . . . to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."  Cal. Gov. Code § 12940(a).  "Sex" is defined as including, but not limited to, "pregnancy, childbirth, or medical conditions related to pregnancy or childbirth."  Cal. Gov. Code §

---

[13] Hereinafter, the Court frames its discussion in terms of  the claims and allegations as set forth in the First Amended Complaint.  To the extent Defendant's Summary Judgment Motion referred to specific claims in the original complaint, the Court treats these arguments as applying equally to the same claims in the First Amended Complaint, pursuant to the stipulation of the parties.

United States District Court

For the Northern District of California

12926(p).  California courts consider FEHA claims to be analogous to discrimination claims brought under Title VII and apply the burden-shifting framework developed by federal courts to address such claims.  *See Flait v. North Am. Watch Corp.*, 3 Cal. App. 4th 467, 475 (1992).

Under that framework, the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  For the purposes of summary judgment, a prima facie case requires the plaintiff to "produc[e] enough evidence to permit the trier of fact to infer the fact at issue." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 n. 7 (1981). The burden of proving a prima facie case is "not onerous." *Id*. at 253.  Once a plaintiff has established a prima facie case, the burden shifts to the employer to produce some evidence that it had legitimate, nondiscriminatory reasons for the employment decision. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985 (1988).  Once an employer has produced such evidence, the plaintiff can survive summary judgment only by providing "significant, substantial evidence of pretext." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983).

To make a prima facie case of discrimination based on pregnancy, Plaintiff must show that (1) she was pregnant, (2) she was qualified for the position, (3) she was subject to an adverse employment action, and (4) a non-pregnant individual was hired to replace her. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996).  Even where the fourth element is not met, a prima facie case may be made where "the plaintiff show[s] through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of . . . discrimination." *Id.* (quoting *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990).

Here, Plaintiff has satisfied the four elements listed above.  In particular, she has presented evidence that she was pregnant, that she was qualified for her position, that she was discharged when she sought to take the full family leave Rotech had told her she was entitled to, and she was replaced by a non-pregnant employee.  Thus, she has set forth a prima facie case of discrimination.

Rotech, however, counters that it terminated Plaintiff for a nondiscriminatory reason under its no call/no show policy when Plaintiff did not show up for work on the Monday following the official expiration

16

United States District Court

For the Northern District of California

1    of her leave period, on November 1.[14]  It also asserts that a strong inference of non-discrimination arises

2    from the fact that Fannin agreed to transfer Plaintiff to a new position even though she knew Plaintiff was

3    pregnant and that Plaintiff was allowed to take a medical leave a year earlier when she experienced an

4    ectopic pregnancy.  *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (holding

5    that "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and

6    both actions occur within a short period of time, a strong inference arises that there was no discriminatory

7    motive").  Because Rotech has presented evidence of a legitimate non-discriminatory reason for its actions,

8    the burden shifts to Plaintiff to present substantial evidence of pretext.  The Court concludes that she has

9    done so.

10       "A plaintiff can prove pretext either (1) indirectly, by showing that the employer's proffered

11   explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2)

12   directly, by showing that unlawful discrimination more likely motivated the employer."  *Fonseca v. Sysco*

13   *Food Servs. of Arizona, Inc.*, 374 F.3d 840, 849 (9th Cir. 2004) (citations omitted).  Here, Plaintiff has

14   presented evidence from which a jury could conclude that the explanation offered by Rotech – that Plaintiff

15   was fired based on Rotech's no call, no show policy – is unworthy of credence.

16       First, there is evidence, albeit contested, that Rotech's policy was to terminate an employee on this

17   basis only after the employee had failed to show up for work for four days.  Plaintiff was terminated after

18   only two days.  Second, there is some evidence that Plaintiff did not fail to call to explain her absence but

19   rather, called several times to apprise her immediate supervisor of the situation, and that her supervisor

20   passed these messages on to Nancy Fannin, who was the individual most directly responsible for Plaintiff's

21   termination.  In particular, there is testimony that Fannin listened to the telephone message Plaintiff left for

22   Schwartz on Monday, that she was aware Plaintiff had recently met with Schwartz and was apprised by

23   Schwartz of Plaintiff's communications with Schwartz concerning her return to work.  Third, there is

24   testimony that Fannin, in seeking permission to terminate Plaintiff, did not tell Cossairt that Plaintiff was on

25   family leave and misrepresented to him that Plaintiff had failed to call or show up for work for four

26   _____

27       [14]  Rotech also suggests that Plaintiff was terminated for the nondiscriminatory reason that the VA
     contract had ended.  This argument is without merit. It is undisputed that Plaintiff had already been granted a
28   transfer to a new position supporting the Medicare contract.

17

**United States District Court**

For the Northern District of California

1   consecutive days.  Fourth, the reason offered by Rotech is undermined by evidence that notwithstanding the

2   November 1 return date (a date which fell on a Sunday), Rotech had approved a ten-week leave which

3   had not expired when Plaintiff was terminated and further, that Rotech did not permit Plaintiff to return at

4   the end of that ten-week period when she offered to do so.  Taken together, this evidence of pretext is

5   sufficiently substantial to defeat Rotech's summary judgment motion.

6          Rotech's reliance on the statement in the Employee Handbook that Rotech will "separate from

7   employment an individual who does not return to work when the FMLA leave expires" is misplaced.

8   According to Rotech, on the basis of this statement the Court should discount all of the evidence cited

9   above as contrary to Rotech's established policy.  Yet the bare statement cited by Rotech offers no

10  guidance as to *when* Rotech would terminate an employee coming off of family leave or under what

11  circumstances it would grant requests to extend family leave.

12         The Court also notes that *Bradley v. Harcourt, Brace & Co.,* on which Defendant relies, is

13  distinguishable.  104 F.3d 267 (9th Cir. 1996).  There, the plaintiff alleged gender discrimination after she

14  was terminated on the basis of poor performance.  *Id*. at 269.  In particular, the defendant presented

15  evidence that there had been "numerous complaints" about the plaintiff's work.  *Id*.  The plaintiff had also

16  asked a subordinate to serve as a reference for her husband and to tell his potential employers that he

17  worked for the defendant when he did not.  *Id*.  The plaintiff did not dispute that she had asked the

18  subordinate to lie.  *Id*. at 270.  Indeed, she produced "no meaningful evidence" of pretext.  *Id*.  The only

19  evidence she offered to show pretext were her own assertions that her supervisor had conversations with

20  her male subordinate that she was left out of, trusted his opinions more than hers and called him

21  "wonderful."  *Id*.  Under those circumstances, the Court concluded, the plaintiff had failed to rebut the

22  inference of non-discrimination that arose from the fact that the plaintiff was fired by the same individual

23  who had hired her less than a year earlier.  *Id*.  Here, in contrast, there is evidence to rebut the inference of

24  non-discrimination that arises from Fannin's having granted Plaintiff a transfer to a new position.

25              **3.       CFRA and  FMLA Claims**

26         Rotech asks the Court to grant summary judgment on Plaintiff's claims under the CFRA and the

27  FMLA on the basis that Rotech did not employee the minimum 50 workers within a 75-mile radius as

28  required under both statutes and further, that it cannot be estopped from relying this defense on the basis

United States District Court

For the Northern District of California

1  that it erroneously told Plaintiff she qualified for leave under the FMLA.[15]  Rotech argues further that even if

2  the FMLA and CFRA apply, Plaintiff has not established a material issue of fact on the merits as to these

3  claims.  The Court concludes that Plaintiff has not established a triable issue of fact regarding the number of

4  employees employed by Rotech. For that reason her claim under the CFRA fails.  However, the Court

5  further finds that there exist material issues of fact both as to whether Defendant is estopped from denying

6  that Plaintiff was eligible for leave under the FMLA and on the merits of that claim and therefore, summary

7  judgment on Plaintiff's FMLA claim is inappropriate.

8  **a.      Number of Rotech Employees**

9          Under bother the FMLA and the CFRA, the obligation to grant family leave does not apply in

10  cases where an employer employs less than 50 employees within a 75-mile radius of the employee's

11  worksite.  *See* 29 U.S.C. § 2612 (FMLA); Cal. Gov. Code § 12945.2 (CFRA).  Thus, to prevail on

12  either claim the Plaintiff has the burden of establishing the employer is a covered employer, that is, that the

13  employer does not fall within this exemption.  *See Price v. Multnomah County*, 132 F. Supp. 2d 1290

14  (D. Or. 2001) (holding that to prevail on a claim under the FMLA, a plaintiff must establish, *inter alia*, that

15  he is an "eligible" employee under 29 U.S.C. § 2611(2)); 29 U.S.C. § 2611(2)(B) (excluding from

16  definition of "eligible employee" any employee who works at a worksite where the employer employees

17  fewer than 50 employees within a 75-mile radius).  Because the ultimate burden falls on the plaintiff on this

18  issue, to prevail on summary judgment Defendant is not itself required to produce evidence regarding the

19  number of employees if it can show that Plaintiff's evidence is insufficient and does not create a material

20  issue of fact.  *See Nissan Fire & Marine Ins. Co. v. Fritz Cos. Inc.*, 210 F.3d 1099, 1102 (9th Cir.

21  2000).

22          Plaintiff heavily criticizes the evidence offered by Rotech in support of its position that it does not

23  employee the requisite number of employees for the FMLA and CFRA to apply.

24  The Court, however, need not reach the reliability (and hence admissibility) of Rotech's figures because

25  Plaintiff herself has offered no admissible evidence suggesting there is a material issue of fact on this

26  _____

27          [15]  The parties do not dispute that the requirements of the FMLA and the CFRA as they relate to the
issues in this case are identical. *See Moreau v. Air France*, 356 F.3d 942, 945 (9th Cir. 2004)  Therefore,

28  the Court conducts a single analysis for the CFRA and FMLA claims.

United States District Court

For the Northern District of California

1  question.  Plaintiff relies on Perkins' testimony that she and Mariel both believed Rotech employed more

2  than 50 individuals within a 75-mile radius but she offers no evidence concerning the basis for this belief.  In

3  the absence of any evidence that either individual had personal knowledge regarding the number of

4  employees who worked at the various offices at the time Plaintiff gave notice of her request for leave,[16] this

5  testimony lacks foundation and fails to satisfy the personal knowledge requirement of Rule 56(e).  *See Sea-*

6  *Land Servs., Inc. v. Lozen Int'l LLC*, 285 F.3d 808, 819 (9th Cir. 2002).  As such, this evidence is

7  inadmissible and cannot be considered on

8  summary judgment.  Plaintiff also points to the fact that Rotech approved the family leave as evidence that

9  this requirement was met.  This evidence, however, is simply too tenuous to create a material issue of fact,

10 given that there is no evidence in the record that anyone at Rotech actually addressed this question in

11 approving Plaintiff's leave request.

12      Nor does evidence of a handful of individuals who may have worked at Rotech facilities in the

13 summer of 2003 that were not included on the Perdices list persuade the Court otherwise.  *See*

14 Supplemental Summary Judgment Opposition at 4, n. 4 (listing six employees omitted from original list filed

15 with Perdices Summary Judgment Declaration – one of whom (Judy Cook) was added to the revised list

16 provided with the Perdices Summary Judgment Reply Declaration).  Even assuming all of these individuals

17 worked for Rotech within a 75-mile radius of the Foster City Office, this evidence does not establish a fact

18 question, as this would bring the total employees up to only 37 based on Perdices revised list.

19      In addition, Plaintiff has offered no evidence to counter the evidence that the Santa Rosa offices

20 does not fall within the 75-mile radius.[17]  Therefore, these employees cannot be included in the count.

21 Given that Perdices listed seven Santa Rosa employees in the original list and nine Santa Rosa employees in

22 the revised list, Plaintiff has not offered any evidence from which a jury could reasonably conclude Rotech

23 employed 50 or more employees within a 75-mile radius.

24 _____

25   [16]  In determining whether the requirement has been met, the date on which the employee gave notice
   of her need to take leave is the relevant date.  *See* 29 C.F.R. § 825.110(f) ("Whether 50 employees are
26  employed within 75 miles to ascertain an employee's eligibility for FMLA benefits is determined when the
   employee gives notice of the need for leave").

27   [17]  Rotech provides a Mapquest print-out showing the distance is 78.06 miles.  Rotech is  correct that
28  the relevant distance is the distance of the driving route and that the 75 miles is not measured "as the crow flies."
   *See* 29 C.F.R. § 825.111(b).

United States District Court

For the Northern District of California

**b.        Equitable Estoppel**

Plaintiff asserts that even if Rotech does not employ the requisite number of employees in the vicinty of her worksite, Rotech is estopped from denying that she is entitled to family leave under the FMLA and the CFRA under the doctrine of equitable estoppel.  She points to the September 9, 2003 Employer Response reflecting that she had been granted family leave under the FMLA and as such, had the right to up to 12 weeks of family leave.   The Court finds that the doctrine of equitable estoppel applies to Plaintiff's FMLA claim but not her CFRA claim.

To establish equitable estoppel, the following requirements must be met: "1) the party to be estopped must know the facts; 2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; 3) the latter must be ignorant of the true facts; and 4) he must rely on the former's conduct to his injury." *Ellenburg v. Brockway*, *Inc*., 763 F.2d 1091, 1096 (9th Cir. 1985).  Generally, whether the doctrine of equitable estoppel applies is a question of fact.  *See Whitney v. United States*, 826 F.2d 896, 898 (9th Cir. 1987).

The Ninth Circuit has not addressed whether the doctrine of equitable estoppel may be applied in cases involving the FMLA.  *See Farina v. Compuware Corp.*, 256 F. Supp. 2d 1033, 1057 (D. Az. 2003).  Other Circuits have, however.  For example, in *Dormeyer v. Comerica Bank-Illinois*, the Seventh Circuit concluded that the doctrine may be applied in FMLA cases:

> Like other equitable doctrines, the doctrine of estoppel is invoked in a variety of statutory contexts without reference to particular statutory language. True, if the statute creates or excludes a right to plead estoppel, the creative power of the administering court or agency is suspended. But there is nothing in the Family Leave and Medical Act that relates to misleading eligibility notices or absences of notice; so far as notice is concerned, the statute merely requires the employer to post a general summary of the Act in the workplace. 26 U.S.C. § 2619. We do not read this provision to exclude the application of the doctrine of an estoppel in an appropriate case. And so an employer who by his silence misled an employee concerning the employee's entitlement to family leave might, if the employee reasonably relied and was harmed as a result, be estopped to plead the defense of ineligibility to the employee's claim of entitlement to family leave.

223 F.3d 579, 582 (7th Cir. 2000); *see also Woodford v. Cmty. Action of Green County, Inc.*, 268 F.3d 51, 57 (concluding that the doctrine of equitable estoppel may be applied in FMLA cases).

This Court also has applied the doctrine of equitable in FMLA cases. *See Headlee v. Vindra Inc.*, 2005 WL 946981 (N.D. Cal.). The facts of *Headlee* are similar to the facts here. In that case, the plaintiff requested intermittent family leave to care for her adult daughter, who was diagnosed with cancer, on a series of Fridays. *Id.* at *1. Her employer granted the leave request in letter stating that the leave would be treated as "Family Medical Leave for which [plaintiff is] eligible for a total of twelve weeks leave." *Id.* A month later, however, it reversed its position, notifying the plaintiff that the leave approval would not be honored and she would have to take either a 12-week unpaid leave of absence from all her duties or she would be terminated. *Id.* The plaintiff could not afford to take a 12-week unpaid leave of absence and was terminated. *Id.* The plaintiff sued her employer for violation of the CFRA and the Family Leave Act and the defendant brought a motion to dismiss. The defendant asserted that because adult children are not covered under the CFRA and FMLA, the plaintiff failed to state a claim.

The court in *Headlee* agreed with the defendant that the plaintiff was not entitled to leave under the CFRA or FMLA to care for an adult child. On that basis, the Court dismissed the CFRA claim. With respect to the FMLA claim, however, the court found that the plaintiff's allegations were sufficient to state a claim under the doctrine of equitable estoppel. *Id.* at *2. Citing *Dormeyer*, the court found that the "plaintiff may be able to show that she reasonably believed defendants' letter granted her leave under the FMLA, that she reasonably relied on defendants' letter, and that she was harmed as a result of defendants' failure to honor their approval for leave." *Id.* The court distinguished the FMLA claim from the CFRA claim on the basis that the letter approving her leave referred only to the FMLA and therefore, the plaintiff could not have reasonably relied as to the CFRA claim. *Id.* at *3.

The Court finds the reasoning in *Headlee* to be persuasive. In particular, the doctrine of equitable estoppel does not apply to Plaintiff's CFRA claim because Rotech's response referred only to the FMLA and therefore, Plaintiff could not reasonably have relied as to the CFRA claim. On the other hand, a jury could conclude that Plaintiff relied, to her detriment, on the erroneous notification that she qualified for leave under the FMLA. There is evidence, which if believed would lead a jury to conclude that: 1) in reliance on Rotech's Response – which expressly stated that she had a right to up to 12 weeks of family leave – Perkins told Kirsch that she believed she was entitled to at least another week of family leave beyond her scheduled return date; 2) Kirsch, in turn relied on this information to advise Perkins that she could "take her

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

1   time" and that Perkins could take an additional week if she needed it; and 3) as a result of her reliance on

2   her belief that she had not exhausted her 12 weeks of family leave, Perkins didn't come in on Monday or

3   Tuesday, resulting in her termination.

4   　　　　The Court rejects Rotech's assertion that Plaintiff's reliance was not reasonable as a matter of law

5   because she knew her leave expired on November 1, 2003.  First, the Court notes that the Rotech

6   Response stated that Plaintiff "expected" to return "on or about" November 1.  This language indicates the

7   date was not necessarily a date certain but might be subject to revision – a conclusion that is further

8   supported by the fact that November 1, 2003, fell on a Sunday.   Second, the Response expressly stated

9   that Perkins had been granted ten weeks of leave, which would not have expired until Friday, November 7,

10   further supporting the conclusion that Perkins could reasonably have relied on Rotech's representation that

11   she was entitled to family leave when she did not return to work on the Monday or Tuesday following

12   November 1, 2003.  Third, Perkins testified that Kirsch told her, based on her understanding that Perkins'

13   family leave under the FMLA had not expired, that Perkins could delay her return, thus reinforcing

14   Plaintiff's belief that she was entitled to delay her return because she had not yet used up her 12 weeks of

15   family leave.

16   　　　　The cases on which Rotech relies to support a contrary position are not on point.  In *Wells v. Wal-*

17   *Mart Stores*, 219 F. Supp. 2d 1197, the court held that equitable estoppel did not apply to the plaintiff's

18   FMLA claim because his reliance, if any, was not reasonable.  In particular, the employee had been notified

19   that he was eligible for family leave under the FMLA even though he had not worked the required minimum

20   hours to qualify for leave under the FMLA.  *Id*. at 1207.  The court concluded that the plaintiff  "plainly

21   was not eligible for any benefits."  *Id*.  Although the court in *Wells* did not provide any meaningful

22   discussion of its conclusion, it apparently concluded that the plaintiff's lack of eligibility should have been so

23   obvious that the plaintiff could not have reasonably relied on the mistaken notification that he qualified for

24   family leave.  That is not the situation here.  The reason Rotech now states it was not required to extend

25   family leave to Plaintiff was the number of employees working at its various facilities in the area.  Given that

26   Rotech was a large company with numerous employees throughout the state and a constantly shifting work

27   force, Plaintiff could not have been expected to know that Rotech did not employee 50 or more individuals

28   within a 75-mile area at the time she gave notice of her request for family leave.  Indeed, Rotech's own

United States District Court

For the Northern District of California

1  difficulties coming up with a reliable number illustrate just how difficult it would have been for Perkins to

2  determine whether Rotech was a covered employer.

3       Defendant's reliance on *Nordquist v. City Fin. Co.*, 173 F. Supp. 2d 537 (N.D.Miss. 2001) is

4  also misplaced.  There, the court concluded that the estoppel doctrine did not apply to the plaintiff's FMLA

5  claim because the plaintiff had presented no evidence of any reliance.  *Id*. at 540.  Again, that is not the

6  case here, where Plaintiff has presented evidence that she *did* rely on Rotech's representation that she was

7  entitled to leave under the FMLA.  Similarly, in *Farina*, the court concluded that the doctrine of equitable

8  estoppel did not apply because there was no detrimental reliance.  256 F. Supp. 2d at 1058.  There, the

9  letter stating that the plaintiff was entitled to leave under the FMLA was sent *after* the plaintiff had used up

10  her 12 weeks of leave and had not returned to work.  *Id*.

11       Therefore, the Court concludes that there is a genuine issue of material fact regarding whether the

12  doctrine of equitable estoppel applies to Plaintiff's FMLA claim.  On the other hand,  Plaintiff could not

13  have reasonably relied with respect to the CFRA claim, and thus Defendant is entitled to summary

14  judgment on that claim.

15            **c.**     **Evidence Supporting FMLA Claims**

16       Defendant asserts that even if it is estopped from denying that the FMLA applies, the evidence is

17  insufficient to create a genuine issue of material fact with respect to Plaintiff's FMLA claims because she

18  cannot show that her termination was causally related to her FMLA leave.  *See Bachelder v. Am. West*

19  *Airlines, Inc*., 259 F.3d 1112, 1125 (9th Cir. 2001) (holding that the *McDonnell Douglas* burden shifting

20  approach does not apply to FMLA claims and that plaintiff could prevail on claim by proving that "her

21  taking of FMLA-protected leave constituted a negative factor in the decision to terminate her").  The Court

22  disagrees.  For the same reasons discussed above with respect to pretext, the Court concludes there is

23  sufficient evidence in the record from which a jury could reasonably conclude that Plaintiff was terminated

24  because she sought to exercise her rights under the FMLA.

25

26

27

28

**United States District Court**
For the Northern District of California

1

      **4.**      **Failure to Prevent Discrimination and Wrongful Termination in Violation of Public Policy**

2

3      Rotech asserts that it is entitled to summary judgment on Plaintiff's claims for failure to prevent

4 discrimination and wrongful termination in violation of public policy because these claims are based on her

5 claims under FEHA, the CFRA and the FMLA, which Defendant asserts fail for the reasons discussed

6 above. Because Rotech is entitled to summary judgment as to Plaintiff's claim under the CFRA, it is also

7 entitled to summary judgment on her failure to prevent discrimination and wrongful termination claims to the

8 extent they are based on the CFRA. To the extent these claims are based on Plaintiff's claims under FEHA

9 and the FMLA, however, summary judgment on these claims is DENIED.

10  **IV.**     **CONCLUSION**

11      For the reasons stated above, Plaintiff's Motion to Amend is GRANTED. Defendant's Summary

12 Judgment Motion and Supplemental Summary Judgment Motion are GRANTED IN PART and DENIED

13 IN PART as follows:

14      **Claim One** (FEHA– discrimination): The Summary Judgment Motion is DENIED;

15      **Claim Two** (CFRA): The Summary Judgment Motion is GRANTED, and the claim is dismissed

16      with prejudice;

17      **Claim Three** (FMLA): The Supplemental Summary Judgment Motion is DENIED;

18      **Claim Four** (FEHA – failure to prevent discrimination): The Summary Judgment Motion is

19      DENIED;

20      **Claim Five** (FEHA – retaliation): The Summary Judgment Motion is DENIED;

21      **Claim Six** (Wrongful Termination in Violation of Public Policy): The Summary Judgment Motion is

22      GRANTED to the extent the claim is based on violation of the CFRA; the Summary Judgment

23      Motion and Supplemental Summary Judgment Motion are DENIED to the extent the claim is based

24      on FEHA or the FMLA.

25

26

27

28

Finally, the Supplemental Summary Judgment Motion is GRANTED as to Plaintiff's request for punitive damages on her claim under the FMLA.

IT IS SO ORDERED.

Dated: October 28, 2005

_____
JOSEPH C. SPERO
United States Magistrate Judge

**United States District Court**
For the Northern District of California